Steve Silver
Amy Gurton Mead
Robertson, Monagle & Eastaugh
801 W. 10th Street, Suite 300
Juneau, Alaska 99801
(907) 586-3340 (telephone)
(907) 586-6818 (facsimile)

ssilver628@aol.com
agmead@romea.com

Attorneys for
Alaska Forest Association,
Intervenor Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. J04-029 CV (JKS) ) |
| UNITED STATES FOREST SERVICE, et al., | ) ) DECLARATION OF JACKIE ) DURETTE IN SUPPORT OF |
| Defendants. | ) RESPONSE TO MOTION FOR ) EQUITABLE RELIEF |

I, Jackie DuRette, pursuant to 28 U.S.C. § 1746, hereby state and declare as follows:

1.   I am a 30 year resident of Alaska and presently live and work in the Ward Cove/Ketchikan area.  My husband (Butch

DuRette) and I have owned and operated DuRette Construction
Company, Inc. (DCC), a heavy construction company in Southeast
Alaska, since 1986 and have worked within the logging industry
since 1977.

   2.    DuRette Construction began bidding on federal road
construction projects after the KPC long term timber sale
closure which began ramping down in 1997.

   3.    In early 2004, environmental activists caused a shut
down of our operations near Petersburg by blockading the access
road and by chaining themselves to our hydraulic drill.  The
chaining incident damaged a hydraulic cylinder that had to be
repaired, causing further delay to our operations.

   4.    Next we were forced to suspend operations on the Orion
North timber sale in October 2004.  There was no other economic
work for our company to bid upon until May 2005 when we were the
successful bidder on the Rio Beaver road construction project.
The closure and long period before another road project became
available cost our small SBA HUB Zone business more than $1
million.  This loss represents funds that we had to borrow from
our local bank to maintain our key employees, to pay employee
benefits, to pay our equipment payments and maintain various
insurance requirements to be able to bid future work.

   5.    We completed the small Rio Beaver project and were the
successful bidder on two more projects in July 2005, the Upper

2

Carroll and the Skipping Cow projects. We are currently working on both of those projects simultaneously. When we bid on these jobs, we did so with the understanding that these were not subject to litigation. Now we are informed that both projects are included in the NRDC requested injunction.

6.    Our company cannot absorb any more losses. Currently we still have loans to repay because of the Orion North injunction. If we are unable to perform on our work at Upper Carroll and Skipping Cow, 15 family jobs (each providing about $50,000 per year) and two subcontractor contracts will be lost and our business, after 25 years struggling to survive in this region, will face certain forced liquidation and our family will be faced with financial ruin.

7.    It is absolutely critical that companies like ours be given some assurance that our work will be sustainable. Our experience with Orion North was terrible. There is no other work for us this field season. It is impossible for a small company like ours to start on jobs and then be forced to stop our work. The mobilization and start/stop costs are just more than we can afford.

I declare under penalty of perjury that the foregoing is true and correct.

Jackie DuRette

3