IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ORGANIZED VILLAGE OF KAKE, SOUTHEAST ALASKA CONSERVATION COUNCIL, NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, THE WILDERNESS SOCIETY, and CENTER FOR BIOLOGICAL DIVERSITY,<br><br>                      Plaintiff,<br><br>vs.<br><br>UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; MARK REY, in his official capacity as Under Secretary of Agriculture; DENNIS E. BSCHOR, in his official capacity as Alaska Regional Forester; and FORREST COLE, in his official capacity as Forest Supervisor for the Tongass National Forest,<br><br>                      Defendants. | Case No. 1:04-cv-00029-JKS<br><br>O R D E R |

        Currently before the Court is a remand from the Ninth Circuit to consider injunctive relief in *National Resources Defense Council v. United States Forest Service (NRDC I) (Consolidated)*, 1:03-cv-00029-JKS. A panel of the Ninth Circuit issued an injunction, which is in force unless and until modified by this Court. *See NRDC v. USFS*, 421 F.3d 797, 816 n.29 (9th Cir. 2005). In that case, the circuit court found that the Forest Service error in estimating the market demand for timber in the 1997 Tongass Land Management Plan ("TLMP") "fatally infected its balance of economic and environmental considerations . . . in violation of the APA."

*Id*. at 816.  The court also found numerous, mostly related, defects in the Environmental Impact Statement ("EIS") for the Plan.  *Id*.

Plaintiffs in the present case, *Organized Village of Kake v. USFS (Kake)*, 1:04-cv-00029-JKS (D. Alaska), raise identical claims to those on which the Plaintiffs prevailed before the Ninth Circuit in *NRDC I, supra*.  In addition, the same claims are also before this Court in *National Resources Defense Council v. United States Forest Service (NRDC III)*, 1:04-cv-00010-JKS, and *Southeast Alaska Conservation Council v. United States Forest Service (SEACC v. USFS)*, 1:06-cv-00005-JWS.  The parties intend the Court's ruling in this case to apply to *Kake*, *NRDC I*, and *NRDC III*.  *See NRDC I*, 1:03-cv-29-JKS, Dockets No. 106; 107.  Plaintiffs have made the same motion for permanent injunctive relief in the three cases before this Court; however, by filing their principal motion in this case, Plaintiffs are attempting to ensure that the interests of the environmental groups common to all three cases, as well as the unique interest of the Organized Village of Kake, are represented.  Accordingly, the Docket Numbers referred to throughout this Order will be to this case, *Kake*, 1:04-cv-00029-JKS, unless otherwise noted.[1]  Currently before the Court are Plaintiff's Motion for Equitable Relief at Docket No. 57 and Plaintiff's Motion to Strike at Docket No. 55.

### Motion to Strike

The Court has allowed intervention on behalf of the Defendants by the Alaska Forest Association.  Docket No. 29.  Plaintiffs have moved to strike an exhibit filed by Intervenor Defendant and the brief that relies upon it.  Docket Nos. 55 (motion); 66 (opp'n); and, 67 (reply).  The Court agrees that the Intervenor Defendant is trying to supplement the record to argue, in effect, that while the Ninth Circuit was correct in concluding that the agency decisions in this case rested on erroneous reliance on an estimate of market demand for timber, a correct analysis

---

[1]The motion for permanent injunctive relief in *NRDC I* is found at Docket No. 108; in *NRDC III* the relevant motion is at Docket No. 53.

ORDER

H:\docs\J04-29-JKS.wpd                         2

Case 1:04-cv-00029-JKS    Document 92    Filed 09/29/2006    Page 3 of 7

would have reached the same conclusion.[2] This is an inappropriate basis for supplementing the record. Therefore, in determining the scope of relief on remand, the Court will not consider the Alaska Forest Association brief and declaration of Owen Graham. To that extent, the motion at **Docket No. 55** is **GRANTED**.

### Motion for Equitable Relief Pending Revision of the TLMP

Plaintiffs' briefing is found at Docket No. 57. Defendants' opposition is at Docket No. 71. Intervenor-Defendant's opposition is at Docket No. 72. Plaintiffs' reply is at Docket No. 88. As explained above, the parties intend the Court's ruling to apply in three cases.

The National Forest Management Act ("NMFA") requires the Forest Service to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." 16 U.S.C. § 1604(a). As the nation's largest national forest, management of the Tongass National Forest in Alaska is governed by the NMFA. By law, forest plans must be revised at least every fifteen years, or sooner if changed conditions warrant a revision. 16 U.S.C. § 1604(f)(5) (2004). The 1997 revision required the Forest Service to consider the market demand for timber when balancing the competing demands on the Tongass of recreation, environmental protection, and timber harvest. *See* 16 U.S.C. § 539d(a).

The Forest Service used the analysis of economists David Brooks and Richard Haynes to determine the market demand for Tongass timber, and to assess whether the Plan would supply enough timber to meet that demand. *NRDC I*, 421 F.3d at 801. The 1997 Brooks and Haynes report projected a low scenario of 68 million board feet per year (MMBF/year), a medium scenario or 110 MMBF/year, and a high scenario of 154 MMBF/year. *Id*. at 801–02. The Forest

---

[2]In its original decision, this Court reached the same conclusion, *i.e.,* harmless error, by a different route. The Court reasoned that estimates of market demand were at best speculative and, thus, of limited value in an environment in which Congress feared that too little, rather than too much, timber would be available to meet market demand. For the proposition that all economic forecasting, like weather prediction, is largely speculative, this Court relied upon Oskar Morgenstern, *On the Accuracy of Economic Observations* (Princeton Univ. Press 1965). Under this reasoning, an overestimate would be harmless error, and only an underestimate would violate Congressional intent. The Ninth Circuit unequivocally rejected this argument.

ORDER

H:\docs\J04-29-JKS.wpd                                3

Service misinterpreted the 1997 Brooks and Haynes market demand projection within the published Record of Decision ("ROD") and Environmental Impact Statement ("EIS") that formed the basis for the 1997 Tongass Plan revision. *Id.* at 802. The Forest Service incorrectly thought the projection numbers only included the projection for lumber when, in fact, the projection numbers included calculations for both lumber (sawlogs) and other types of wood (utility volume). *Id.* Accordingly, the projected demand scenarios contained in the ROD and EIS were 130 MMBF/year (low), 212 MMBF/year (medium), and 296 MMBF/year (high). *Id.*

The Plaintiffs successfully claimed on appeal in *NRCD I* that the error doubling the projected market demand rendered the Plan arbitrary and capricious, in violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). *Id.* at 816. In addition, the Plaintiffs successfully alleged that the market demand error tainted the EIS, upon which the Plan was based and, therefore, the Plan was in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332. *Id.*. The Ninth Circuit agreed with all of Plaintiffs' challenges. *Id.* The Forest Service has been instructed to prepare a new EIS and Plan revision based upon accurate market demand. *Id.* at 810 n.26. In addition, the Ninth Circuit left in place a temporary injunction granted by a motions panel to prevent construction of a road into a roadless area pursuant to one of the Plan's authorized timber sales (Orion North), and remanded the case back to this Court to consider the scope of a permanent injunction, consistent with their ruling. *Id*. at 817; *see also*, Docket No. 57, Exhibit 24.

To qualify for injunctive relief, Plaintiffs must demonstrate: 1) the inadequacy of legal remedies by showing irreparable injury; 2) success on the merits; and 3) that the injunction was warranted by a balance of the equities. *See Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). The scope of the injunction should be as narrowly tailored as possible to "restrain no more than what is reasonably required to accomplish its ends." *See State v. City of Va. Beach*, 951 F.2d 596, 602 (4th Cir. 1991).

Essentially, Defendants are arguing that the Court should limit equitable relief to those sales directly involved in the consolidated cases.[3]  The Defendants rely upon *Ohio Forestry Associates, Inc. v. Sierra Club*, 523 U.S. 726 (1998).  In *Ohio Forestry* the Sierra Club directly challenged the Forest Service's management plan for Ohio's Wayne National Forest as being in violation of the NFMA, NEPA, and the APA.  *Id.* at 731.  On appeal from the district court's grant of summary judgment in favor of the Forest Service, the Sixth Circuit Court of Appeals disagreed about the merits, but first found both that the Sierra Club had standing to bring suit, and that the suit was ripe.  *Id.* at 732.  However, the Supreme Court unanimously held that the dispute was not ripe.  *Id.*  It is clear that *Ohio Forestry* deals with ripeness, not the scope of equitable relief.  The Sierra Club's challenges to the Wayne National Forest Plan were directed at the Plan's allowance of below-cost timber sales (accomplished by clearcutting), and its failure to properly identify "economically unsuitable lands."  *Id*. at 731.  The challenge in *Ohio Forestry* involved the substance of the rules under NFMA, whereas the Plaintiffs' challenges in the present case were largely procedural.  *See* 421 F.3d at 811.  In this case, it is likely that the Ninth Circuit would consider Plaintiffs' challenges, which it sustained as procedural rather than substantive, as ripe.  *See, e.g., Citizens for a Better Forestry v. United States Dep't of Agric.*, 341 F.3d 961, 976–78 (9th Cir. 2003).

The Plaintiffs, on the other hand, would like broad injunctive relief, designed to prevent the Forest Service from authorizing new timber sales in roadless areas and on Kuiu Island before the Forest Plan revision is complete.  In addition, they request that the site-specific decision documents authorizing timber sales on roadless areas be vacated.  Plaintiffs are concerned that the Forest Service continues to authorize new site-specific timber sales, not specifically at issue in these cases, while the planning process is still underway, and while it still must redraft the EIS for the Forest Plan revision.  Doing so, the Plaintiffs say, "makes a mockery of the process."  Docket No. 57 at 15.  Plaintiffs want the Court to enjoin sales not specifically at issue in the

---

[3]Finger Mountain, Cholmondeley, Sea Level, Canal Hoya, Crane and Rowan, and Chasina (*NRDC I*); Madan (*NRDC II, consolidated with NRDC I*); Woodpecker (*NRDC III);* and, Threemile (*Kake*).

ORDER

appeal because the "same rationale applies." *Id*. Not to do so will spawn "needless litigation." *Id*. at 16.

However, in balancing the equities to determine the scope of an injunction in this case, it is not clear that Plaintiffs will suffer irreparable harm if no injunction is entered. There is no need to expand equitable relief in this case because the decision in *NRDC I* is binding on the government under normal rules of issue preclusion, and on the general public under the doctrine of stare decisis, so that in each case a future sale would be invalid and therefore enjoinable to the extent that its EIS and ROD relied in whole or in part on the flawed Forestry Plan.[4] *See, e.g., Ohio Forestry*, 523 U.S. at 735. To grant the kind of broad relief Plaintiffs are requesting would not result in as narrowly tailored an injunction as possible. Accordingly, Plaintiffs' Motion for Equitable Relief Pending Revision of the Tongass Land Management Plan at **Docket No. 57** is **GRANTED IN PART AND DENIED IN PART**.[5]

**IT IS THEREFORE ORDERED**:

The Forest Service shall not, until the earliest of January 1, 2008, or the date the Forest Service publishes a Record of Decision (ROD) for the Environmental Impact Statement (EIS) prepared for the Tongass Land Management Plan in response to the decision in *NRDC I*, 421 F.3d 797 (9th Cir. 2005) offer any contracts for timber sales or associated road construction pursuant to the following timber sale projects:

1.  Sea Level (except for the Buckdance/Madder sale and associated road contracts)

---

[4] The Court assumes that no sale dependent on what the Ninth Circuit found to be a flawed procedure will take place. The Court has balanced what it understands to be the relative benefit of a broad injunction at this stage in reducing the cost of subsequent litigation, against the possibility that in subsequent litigation a future lease might be based on a record that would directly address the Ninth Circuit's concerns and provide a basis for distinguishing the case and allowing the lease to be made without violating the Ninth Circuit's decision. Only time will tell.

[5] Entry of this Order also Grants in Part and Denies in Part the Motion at Docket No. 108 in 1:03-cv-00029-JKS and Grants in Part and Denies in Part the Motion at Docket No. 53 in 1:04-cv-00010-JKS.

ORDER

2. Cholmondeley

3. Finger Mountain

4. Canal Hoya

5. Crane and Rowan

6. Madan

7. Threemile

8. Woodpecker — that portion of the Timber Sale Project subject of the 2003 ROD

9. Chasina — that portion of the Timber Sale Project not within the modified Fusion timber sale contract described in the Consent Decree filed July 26, 2004, in this action.

The parties are further ordered to meet, confer, and submit a written status report no later than **Friday, October 13, 2006**, filed by the Plaintiff separately in *Kake* (1:04-cv-29-JKS), *NRDC I* (1:03-cv-29-JKS), and *NRDC III* (1:04-cv-10-JKS), informing the Court what issues, if any, remain open in each case and what remains to be done to bring each case to a close.

Dated at Anchorage, Alaska, this 29th day of September 2006.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge