Steve Silver
Robertson, Monagle, and Eastaugh
2300 Clarendon Blvd., #1010
Arlington, VA 22201
703-527-4414(o)
703-527-0421(f)
email:  ssilver628@aol.com

Attorney for Defendant-Intervenor
Alaska Forest Association


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| ORGANIZED VILLAGE OF KAKE, SOUTHEAST | ) | |
| ALASKA CONSERVATION COUNCIL, NATURAL | ) | |
| RESOURCES DEFENSE COUNCIL, SIERRA CLUB, | ) | |
| THE WILDERNESS SOCIETY, and CENTER FOR | ) | |
| BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No: J04-0029 CV (JKS) |
| | ) | |
| UNITED STATES FOREST SERVICE; UNITED | ) | |
| DEPARTMENT OF AGRICULTURE; MARK REY, | ) | |
| In his official capacity as Under Secretary of Agriculture; | ) | |
| DENNIS E. BSCHOR, in his official capacity as Alaska | ) | |
| Regional Forester; and FORREST COLE, in his official | ) | |
| capacity as Forest Supervisor for the Tongass  National | ) | |
| Forest, | | |
| Defendants | | |

DEFENDANT-INTEREVENOR'S OPPOSITION BRIEF (COUNTS V AND IX)

TABLE OF CONTENTS

INTRODUCTION…………………………………………………………..…………..4

THE IMPORTANCE OF THIS CASE……………………………………………………6

DRIVING DOWN SUPPLY DOES NOT MEAN LESS DEMAND…..........................6

PLAINTIFFS ARGUMENTS IN THIS CASE…………………………………………9

PLAINTIFFS ARGUMENTS ARE GROUNDLESS………………………….…..10

CONCLUSION……………………………………………………….....................20

TABLE OF AUTHORITIES

FEDERAL CASES

*Animal Defense Council* 840 F. 2d 1432 (9th Cir. 88)………………......................8, 11

*Earth Island Institute v. USFS* 351 F. 3d1291, 1302 (9th Cir. 2003)………………..…8

*Natural Resources Defense Council v.USFS,* 421 F.3d 797  (9th Cir.2005)……..……..4

*Oregon Environmental Council v. Kunzman,* 817 F.2d 484,493 (9th Cir, 1987)…………8

FEDERAL STATUTES

16 USC 539d (USC P.L.103-626)………………………………………………………...7

16 USC 3120(a) (ANICLA) Sec.810(a)…………………………………… 10, 12, 18, 19

## INTRODUCTION

This case involves 19. 5 million board feet of timber authorized by the Three Mile Timber Harvest Record of Decision. Exhibit 1.  Over the last year, the parties to this litigation have settled a number of pending lawsuits including all but two of the nine counts of this litigation.  These settlements were driven to a large measure by *Natural Resources Defense Council v.United States Forest Service,* 421 F.3d 797 (9th Cir.2005). That decision drastically limited Forest Service options to offer 297 mmbf of timber covered by the timber sales in these cases. See  Settlement Agreement *NRDC v. USFS*.  See Exhibit 2.

The settlement bars  256  million board feet (mmbf) of timber harvest in the following sales until at least 30 days after a new Tongass Land Management Plan (TLMP) Record of Decision is published in the Federal Register and the conclusion of any appeals process:

| | | |
|---|---|---|
| Kuiu Island | 17mmbf | (Exhibit 3a) |
| Scratchings | 15 mmbf | (Exhibit 3a) |
| Canal Hoya | 16 mmbf | (Exhibit 3b) AR 13_41286 |
| Crane Rowan | 28 mmbf | (Exhibit 3b) AR 13_41286 |
| Finger Mtn. | 21 mmbf | (Exhibit 3c) |
| NW Baranof | 54 mmbf | (Exhibit 3d) |
| Chomondley | 37 mmbf | (Exhibit 3e) certain helicopter units ok |
| Emerald  Bay | 16 mmbf | (Exhibit 3a) |
| Woodpecker 2004(3) | 11 mmbf | (Exhibit 3f) |
| Madan Bay | 25 mmbf | (Exhibit 3e) |
| Chasina | 6 mmbf | (Exhibit 3a) (Johnson Mtn. portions) |
| Cholmondeley | <u>10</u> mmbf | (Exhibit 3a) (Cher portion) |
| | 256mmbf | |

The above volumes are sourced from the USFS website, the completed NEPA documents for the individual timber sale NEPA documents, See Exhibit 3a-f

The settlement agreement cleared only 61.1 mmbf for sale in the following sales:

Lindenberg              13.7 mmbf

| | |
|---|---|
| Upper Carroll | 16.5 mmbf |
| Red Mtn. | 5.9 mmbf |
| Finger Point | 2.2 mmbf |
| Midway | 8.1 mmbf |
| Mad-Buck II | <u>14.7</u> mmbf |
| | 61.1 mmbf |

The settlement agreement also cleared certain other sales which account for an additional 38 mmbf.

See Exhibit 4
**http://www.fs.fed.us/r10/ro/policyreports/for_mgmt/vol_under_contract/vol_under_contract_2007m06.xls**

On July 25, the 9th Circuit dismissed the pending litigation over the status of the pending Tongass Land Management Plan (9th Cir. No. 04-35519 and No.04-35533) at the joint request of most of the same parties to this litigation. See Exhibit 8 . With the exception of these remaining counts, the settlements and dismissals effectively delay future litigation on the Tongass timber sale program until at least 30 days after the publication of the TLMP Record of Decision. By dictating the few sales which can be offered and preventing virtually all other sales from being offered, the combination of these recent settlements and dismissals bar completion of the vast majority of timber which USFS can prepare or sell in FY 2007 or FY2008.

The effects of these decisions are so dramatic that the USFS has only offered only 5 mmbf of timber for sale from October 30, 2006. - June 30, 2007, See Exhibit 4. (shaded amounts) Current inventory for the timber industry is even thinner than it was when the sale subject to this litigation was approved. The Viking sawmill has only 22 mmbf under contract – this is only a third of their annual capacity and the Pacific Log and Lumber sawmill has 32 mmbf, but about 31 mmbf of those sales are delayed while the Forest Service completes required road construction. Since the currently operating mills are

already critically short of timber, there is no timber supply available to restart the

Ketchikan Veneer mill.  See Exhibits 5 and Exhibit 6**.**

### THE IMPORTANCE OF THIS CASE

Because the timber inventory situation is so thin, the 19.5 mmbf in this sale is

increasingly important.  If this sale goes forward, it can provide vital assistance to the

terribly tight timber supply situation for the members of the Alaska Forest Association.

While the decision for this case will be based on the case's Administrative Record, AFA

states that there is nothing in the Administrative Record or other publicly available

information of which this court can take notice, such as the *NRDC I* settlement, that has

improved the inventory situation. The decision of the Forest  Service to offer the three

Mile Sale is desperately important  because the timber supply is now so low that without

immediate relief (timber sales such as this) the sawmills will close very soon.

### DRIVING DOWN SUPPLY DOES NOT MEAN LESS DEMAND

Having led the charge in challenging the vast majority of timber sales offered by

the Forest Service since 1998, the Plaintiffs now argue that the inability of the industry to

purchase and harvest of this same timber means there is less demand.  This is wrong and

disingenuous in the extreme. Plaintiffs cannot claim there is no demand based on "low"

harvest levels when so much of the timber to be offered over the last 10 years was

challenged in litigation and not available to the timber industry in a timely manner or not

at all.  This  Court is well aware that Plaintiffs along with others have constantly

challenged timber sales in the Tongass in this last decade  This claim is the height of

chutzpah which is defined as" unmitigated effrontery or gall". See [chutzpah - Definitions from Dictionary.com](#).

Lack of supply, artificially created by this and other litigation, does not define demand.   No parties other than Plaintiffs have more to do with the failure of the Forest Service to meet its obligation to seek to meet timber demand under the Section 103 of the Tongass Timber Reform, 16 USC 539d (USC P.L.103-626). The ceaseless litigation which Plaintiffs have pursued over the last decade since the Brooks and Hanes 1998 report has produced a supply crisis which Plaintiffs mischaracterize as a lack of demand.

Plaintiffs provide no independent basis for their statement that the USFS demand calculations are arbitrary and capricious.  If it so clear that there is a lack of demand in the Tongass for federal timber, where is the economic evidence or study that plaintiffs have provided for the record or which it references in its opening brief?  **There is none.**

Plaintiffs cites no economist to make the case that there is no demand beyond the 41 million board feet it alleges to be the current demand on the Tongass.  Plaintiffs baldly assert that the current harvest based on a depressed supply greatly reduced by litigation is the demand.  Nowhere in their briefs do Plaintiffs address the unused capacity of the industry nor that Plaintiffs assertion of low demand have not been tested by a supply in the last decade which would show that an adequate supply of marketable timber would be purchased by the industry if made available.

Under the APA, the plaintiffs have failed to meet the burden to show that the economic analysis of Brooks, Haynes and Morris is faulty.  Mere assertion does not meet the tests that Plaintiffs themselves acknowledge:

1.  Did the Forest Service "unreasonably rely upon inaccurate data" for its decision as required by *Animal Defense Council* 840 F. 2d 1432, 1439(9[th]Cir. 1988) *or Earth Island Institute v. USFS* 351 F. 3d129,1302 (9[th]Cir. 2003) as a basis for finding an EIS insufficient?  While asserting this, Plaintiffs offer no economic analysis supported by an economist.   Instead it provides only Plaintiffs' bare assertion.

2.  Did Plaintiffs show that USFS conclusions are based on an "estimate that has since been shown to be egregiously incorrect?"  Plaintiffs again offer no specific proof that USFS dates was "glaringly or flagrantly mistaken." –See definition -- egregiously - Definitions from Dictionary.com

3.  Did the USFS fail to provide sufficient information for the decision maker to consider the environmental factors and make a reasonable decision as required by *Oregon Environmental Council v. Kunzman,* 817 F.2d 484,493 (9th Cir, 1987)? Plaintiffs cite no failure of the USFS to display insufficient information.  Plaintiffs do disagree with the USFS conclusion but provide no showing of insufficient information on environmental or economic factors.

Clearly, Plaintiffs cannot meet their own standards for overturning the USFS decision on

Counts V and IX.  The USFS as the decision maker makes this decision not the Plaintiffs.

## PLAINTIFFS ARGUMENTS IN THIS CASE

The Plaintiffs present the following arguments in their Opening *Brief*.

These will be analyzed in the order presented by Plaintiffs:

1.  The Three Mile Sale s in a traditional subsistence area for Kake-*Pl. Brief, p. 2*
2.  1997 USFS demand projections are too high-*Pl. Brief*, p. 2
3.  Deer populations crashed in 1973; hunting was closed for 18 years.-*Pl. Brief*-p. 4
4.  Brooks and Haynes demand projection are too high-*Pl. Brief,* p. 6
5.  Timber Harvest demand has returned to the levels of the 1950s.— *Pl. Brief, p. 7*
6.  Declining Markets led two SE Ak wood products companies to close.—*Pl. Brief*, p.7
7.  Timber sales cancellations were result of "steady market decline-*Pl. Brief.* p. 8
8.  Lack of market demand caused 29% of timber sales to receive no bids--*Pl. Brief,* p.8
9.  Timber sales cause "losses" to the Federal Government- *Brief*, p. 8
10. Three Mile sale "disproportionately" targets best quality deer habitat—*Pl. Brief*, p.9
11. The USFS relies on 1997 demand data which has not been updated—*Pl. Brief,* p. 11
12. 9th Circuit test to overturn EIS: "egregiously incorrect" information-*Brief*, p12
13. Long Term Planning is based on 1997 projections, *Pl. Brief,* p.*15*
14. Forest Service has not changed its projections since 2000, *Pl. Brief,* p.15
15. If 1997 projections are too high, market demand will be too high, *Pl. Brief,* p.15
16. Timber Harvest = Demand-less than half the lower cut scenario, *Pl. Brief,* p.16
17. Market changes = mistake in demand projections, *Pl. Brief*, p.17
18. Changes in markets require the updating of  Brooks/Haynes analysis, *Pl. Brief*, p.19
19. There is no Market for chips and low grade logs, *Pl. Brief,* p. 19
20. Prices for Tongass timber have declined = no market demand, *Pl. Brief,* p.20

21. Failure to reveal these changes misleads and violates NEPA, *Pl. Brief,* p.20
22. Arbitrary Market Demand leads to arbitrary ANILCA 810(a) finding, *Pl. Brief,* p. 20
23. Arbitrary Forest Plan and market demand require ROD be set aside, *Pl. Brief,* p. 20
24. The Kake Subsistence area must be avoided. *Pl. Brief,* p.24
25. While not repeating "doubling" error, USFS ignored other evidence, *Pl. Brief,* p. 25
26. Failure to revise because of 70% domestic market is arbitrary, *Pl. Brief,* p. 25


### PLAINTIFFS ARGUMENTS ARE GROUNDLESS

Each of the Plaintiffs 27 arguments in this case is groundless and has been rebutted effectively in prior pleadings by the USFS as well as being addressed here.

**1. The Three Mile Sale is a traditional subsistence area for Kake.—***Pl. Brief, p.5*

As the Forest Service brief ably states, this statement can be made in any part of the Tongass and is not the basis for any decision to find for Plaintiffs. The fact is that Plaintiffs oppose any timber harvest on Kuiu Island. The only way to satisfy this allegation regarding subsistence is to eliminate all timber sales on Kuiu Island. *Pl. Brief,* p. 5, (quoting Davis Dec.)

Moreover, as the Forest Service Brief aptly points out, this argument can be made by any litigant claiming subsistence use on any timber sale. If plaintiffs were to prevail on this allegation, there would be no harvest in the Tongass, possibly including even the 41 mmbf which Plaintiffs now claim is the annual demand upon which USFS should rely. Unless the USFS analysis on subsistence is upheld, the Plaintiffs will use this same rationale in future cases and render the reasoned analysis required by 810(a) a nullity. Instead, future plaintiffs will dictate the terms of the Section 810(a) analysis by mere

statements that they are subsistence users and oppose the use of a specific area for timber harvest.

**2.    The 1997 USFS demand projections are too high—Pl. Brief, p.2**

Plaintiffs repeatedly allege that the projections for timber harvest are too high and therefore the decision to approve this sale is arbitrary and capricious.  This allegation is repeated in various ways another 3 times on pages 6, 11,  and 15.  In none of these pages of the brief do Plaintiffs' provide any economic or actual evidentiary basis to support these allegations.  In each, Plaintiffs provide broad assertions with no facts:

p.  2—claims "overwhelming evidence" with no factual support cited.
p.  6—claims "demand forecasts…too high" with no factual support cited.
p.11—claims "dramatically too high" with no factual support cited.
p.15—claims "projections are  too high" with no factual support cited.

For the Plaintiffs, it is merely enough to allege a decline in market demand.  They see no need to explain this assertion.  However the law requires more.  As stated by Federal Defendants, "a court will only reject an EIS when a) the economic information is grossly incorrect and (b) is so misleading as to impair the agency's consideration of is decision making under NEPA.  Def. Brief, citing *Animal Defense Council v. Hodel,* 840 F. 2d 1432 at 1439, 9th Cir. 1988) .

Plaintiffs' brief provides no evidence that the USFS economic information is grossly misleading.   It merely asserts mistake based on its interpretation of the facts. This is not enough.

**3.  Deer populations crashed in 1973; hunting was closed for 18 years.-*Pl Brief-p.* 4**

This argument is noteworthy for points:  a) even Plaintiffs admit that this crash in deer population had nothing to do with logging since the crash occurred prior to any

commercial logging on Kuiu Island and b) the effect of subsequent logging has nothing to do with Plaintiffs' demand argument.  This argument regarding deer population is a legal non sequitur in a brief that depends upon lack of demand for its legal theory.  Even Plaintiffs' subsistence argument is based on demand, stating that incorrect demand analysis drove the decision under Sec. 810(a) of ANILCA.  *Pl Brief*, **p.21-22.**

**4.  Brooks and Haynes demand projections are too high**- *Pl Brief,* **p.6**

This argument was discussed and shown to be unsupported at item 2 of

this analysis, *supra,* p 8.

**5. Timber Harvest has returned to levels of the 1950s.—***Pl Brief  p. 7*

To be accurate, Plaintiff's merely state that the "current cutting levels" are "approximately" those of 50 years prior.  In the context of this paragraph, it is clear that Plaintiffs imply that this "cutting level" equals demand.  However as throughout their Brief, Plaintiffs mischaracterize the supply data to be demand with no basis for this assertion.  The mere fact that the Plaintiffs have denied timber supply through successful litigation and forced the current cutting level down to any specific, low level does not equate that level with demand. It merely shows the success that Plaintiffs have had in challenging individual timber sales since the end of the long term timber sales.  Plaintiffs improperly and purposefully state that supply is demand, but provide no evidence to support this.

**6.   Declining Markets led two Southeast Alaska wood products companies to close.—*Pl Brief*, p.7**

Plaintiffs again assert that "declining markets and logging levels" forced Gateway Forest Products and Silver Bay Logging inc. to file for bankruptcy, but provide no proof of this assertion.   However, plaintiffs do not state that Silver Bay Logging emerged from bankruptcy in 2005 and is now operating.  If demand were so low, why did Silver Bay emerge from bankruptcy rather than close permanently?  Why did it not liquidate itself?

**7.   Timber sales cancellations were result of "steady market decline."-*Brief* p. 8**

As to the USFS extensions and cancellations, this situation developed over several years as the Forest Service provided more and more uneconomic timber sales. The mills had to choose between purchasing uneconomic timber sales or closing and losing their customer base. The problem was exacerbated by the low level of viable timber available after the successful litigation of the Plaintiffs to deny timber to the market.  This was not declining market, but it was declining supply of marketable timber caused in part by litigation.

**8.   Lack of market demand caused 29% of timber sales to receive no bids- *Pl Brief*, p.8**

Federal Defendants provide a cogent and detailed rebuttal of this over simplistic analysis. The Alaska Forest Association agrees with this analysis which can be simply stated: USFS has had many problems delivering economic timber and the timber industry has suffered because of this.  However, such suffering does not mean there is a lack of

demand—it means there is a lack of supply of viable, economic timber.  As the Federal

Defendants succinctly state on page 13 of their brief:

"An operator cannot be expected to harvest timber if the cost of timber scientifically

exceeds the value of the timber."  If these sales had been economic, the industry would

have purchased them. After all, the Industry has millions of board feet of unused

capacity. 501.85 million to be exact.  According to this sale's record See Exhibit 6,

Admin. Record Doc. 17-0603 Table 2 and Doc 17-00605. Pl.   Is it logical that so many

facilities would fail to purchase economically viable timber?  Further, Plaintiffs provide

no basis for this allegation that lack of  demand is the culprit.


**9.   Timber sales cause "losses" to the Federal Government- Pl. *Brief*, p. 8**

This statement is completely irrelevant to either Counts V or IX, which deal with the

demand and subsistence analysis under ANILCA.  Congress expressly and annually

Tongass Timber Reform Act. That policy and funding decision is irrelevant to this case.


**10.   The Three Mile sale "disproportionately" targets best quality deer habitat— *Pl.***
***Brief*, p.9**

While AFA concedes nothing on the issue of how much deer habitat has been or will be

harvested, this statement does not show how such a decision is arbitrary or capricious.

The decision maker has weighed the evidence and made a determination.  Plaintiffs fail

to meet any burden that its decision was arbitrary and capricious.

**11. USFS relies on 1997 demand data which has not been updated—*Pl. Brief,* p. 11**

This is a derivation of Plaintiffs' complaints that the market data is incorrect.  See

decision at point #4, *supra,* p. 8.  Merely stating that demand has changed  because of a

change in harvest levels, particularly if driven by Plaintiffs' own litigation does not meet

the burden that Plaintiffs bear in this case.  As to changes in Asian markets, Plaintiffs

provide no evidence to support their allegation.  And even if true, this does not mean that

demand for Tongass timber has declined as there are other available markets.

**12**.  **USFS data meets the 9th Circuit test as arbitrary and capricious because it is**

**"outdated and misleading," *Pl. Brief, p. 13***

After 2 pages of citations expressing various "tests" that provide the basis for overturning

the USFS decision in the Three Mile sale, the Plaintiffs provide only one sentence in

support:  that USFS data was outdated and misleading.  This does not meet any burden to

prove this data is either outdated or misleading.  Simply stating it does not make it so.

**13. Long Term Planning is based on 1997 projections,  *Pl. Brief,* p.*15***

At the end of the discussion of how the 1997 projections affect this sale, the Plaintiffs

state that if these projections are too high, the annual market demand is too high.  This

statement is a conclusion for which Plaintiffs present no economic evidence here or

elsewhere in their brief.  Mere assertion does not meet the burden which Plaintiffs must

carry.

**14.  Forest Service has not changed its projections since 2000,  *Pl.***

***Brief,* p.*15**

See discussion at point #4., *supra, p 8*


**15. 1997 projections are too high, market demand will be too high, *Brief,* p. 16**

See discussion at point #4, *supra,  p. 8*


**16. Timber Harvest less than half the lower cut scenario shows demand is low. *Pl.***

***Brief, p*. 16**

As described above, Plaintiffs rely solely on the low federal timber harvest numbers. As

shown by USFS in its reply brief, harvest does not equal demand when the results of

years of litigation have dramatically lowered harvest by lack of supply due to said

litigation.  The Irland Group report to Congress in 1991 made it clear that the markets for

timber litigation from the Tongass are basically unlimited and that the industry would be

constrained only by the available timber supply. (See the 1997 Flynn report. p. 4, 29, 30,

and 34.  Exhibit 7 AR #11_a672)


**17. Market changes = mistake in demand projections, p. 17**

The USFS addresses the allegation that changes in market conditions prove a mistake in

demand projections.  Quoting the same report cited by Plaintiffs, it is clear that the

ongoing uncertainties of market changes were taken into account by USFS.  The inset

quotation reflecting that "short term fluctuation in market conditions…do not always

indicate long term structural changes" rebuts the Plaintiffs allegation.  See def. Brief, p.

15   The fact is that the timber industry in Southeast Alaska is constantly marketing its product to international and domestic markets. The record cannot reflect the current market conditions since the record is many years old. However, Plaintiffs, as usual, can cite no economic market analysis in the record to support this market allegation.


**18.    Changes in markets require the updating of Brooks/Haynes analysis,  *Pl. Brief, p.18***

This is an administrative record case and there is sufficient analysis in the record to uphold the USFS decision. Further, Plaintiffs provide no legal or economic basis for their demand that the Brooks and Haynes analysis must be updated before this decision can be upheld. As elsewhere in this brief, Plaintiffs cite no economic data in the record to justify the "changes in markets" or any other basis for their demand.


**19. There is no market for chips and low grade logs—*Pl. Brief,* p. 19**

As stated above, the Plaintiffs allegations that there is no market for chips and low grade logs is not a basis for overturning this sale. To the extent mentioned by Brook and Haynes, the issue of chips is merely mentioned in analyzing the industry's "increased applications to export low grade" hemlock and spruce logs. Clearly Brooks and Haynes understood that the chip market status is not determinative. As always, Plaintiffs cite no legal or economic market data to justify their position. If this were not a record case, the AFA could provide current data to demonstrate that the sawmills have reported good chip prices for several years.

**20. Prices for Tongass timber has declined = no market demand, Pl. *Brief*, p. 20**

As elsewhere in their brief, Plaintiffs quote an isolated sentence in an unrelated EIS, the "Wilderness EIS" for the proposition that timber prices have declined. The Plaintiffs provide no basis for relating their allegation to a failure of the record. As with point 19 AFA could provide current data that shop grade lumber prices have increased in recent years.

**21. Failure to reveal these changes misleads and violates NEPA, *Pl. Brief*, p, 20**

The Plaintiffs have met no burden to either prove changes in market demand or provide alternative data from the record. This allegation that the 1997 Brooks and Haynes data cannot be used is merely attacked. This is no basis for overturning this sale decision**.**

**22. Arbitrary Market Demand leads to arbitrary ANILCA 810(a) finding, *Pl. Brief*, p.22**

The Plaintiffs argument under section 810(a) of ANILCA depends on their allegation of arbitrary market demand. This argument has not been proven. Instead, Defendants correctly state the obvious:

> "There is currently a market demand for timber, a limited supply from other sources, and **underutilized mill capacity in the region."** (emphasis added) Def. Brief, p. 20.

For the Alaska Forest Association, this really describes the dilemma. Without this and other sales, it will be very difficult for the industry to continue. With economic timber sales, the industry can thrive.

**Plaintiffs' Closing Points**

Plaintiffs make four closing points in their brief. All are faulty and will be rebutted below.

### 23. The arbitrary forest plan and market demand require the ROD be set aside. Pl. *Brief*, p.22

Plaintiffs have not proved or made a case that the Forest Plan and the Brooks Haynes Market demand calculations require the Three Mile Record of Decision to be set aside. The Plaintiffs present no economic data in the record to support their position: only argument. More is required. The USFS decision is entitled to deference and Plaintiffs' have not met their burden to overcome this deference simply by repeating their allegation over and over in their brief.

### 24. The Kake Subsistence area must be avoided. Pl. *Brief,* p.24

Defendants USFS properly state that virtually all of the Tongass is utilized for subsistence by some residents. Def. Brief, p. 9 (quoting Pl. Exh. 21 at 19-20). The Section 810 (a) analysis was properly performed and this decision must be upheld. There is a congressionally approved, sanctioned, and funded timber program and finding for Plaintiffs would only required timber harvest in another area.

### 25. While not repeating "doubling" error, USFS ignored other evidence, *Pl. Brief,* 25

Defendants' brief effectively rebuts this and other allegations by Plaintiffs. Defendant-Intervenor will not repeat these rebuttals here. The fact is the USFS did not repeat the "doubling error" which was the basis for the the 9th Circuit Decision in NRDC I. The

plaintiffs cannot point to record evidence to overturn the Brooks and Haynes analysis in this case.

**27.  Failure to revise because of 70% domestic market is arbitrary,** *Pl. Brief,* **p.25**

Defendants specifically rebut this allegation in their brief at p. 16-17.  Plaintiffs allege that because the domestic market is larger than specifically forecasted, this is a basis for overturning the decision.  This is patently wrong.  Not only does an increase in domestic markets make clear that there is demand, this was contemplated in the Brooks and Haynes and Morse analysis.

**CONCLUSION**

Plaintiffs fail to meet their burden to prove that the USFS decision to sell the Three Mile Timber Sale was arbitrary and capricious.  Despite an extensive record, the Plaintiffs make bald assertions that demand is incorrect without any record data to support these assertions.  Further, Plaintiffs demand that the Section 810(a) analysis be overturned even though the USFS fully meets its obligations to conduct a subsistence analysis as part of the Three Mile Sale EIS.

The USFS decision must be accorded deference and upheld unless the Plaintiffs can prove the decision was based on egregiously incorrect information and was therefore arbitrary and capricious.

The Plaintiffs submit no economic or other such information.

Plaintiffs' complaint as to Counts V and IX should be denied.

RESPECTFULLY SUBMITTED at Anchorage, Alaska

Dated: <u>July 30, 2007</u> <u>By:   s/Steven W. Silver</u>
                                    Steven W. Silver, ABA #7606089
                                    Robertson, Monagle, and Eastaugh, P.C.
                                    2300 Clarendon Blvd, #1010
                                    Arlington, VA 22201
                                    703-527-4414(o)
                                    703-527-0421(f)
                                    email:  ssilver628@aol.com
                                    Attorney for Defendant-Intervenor
                                    Alaska Forest Association

**Certificate of Service**

I hereby certify that on the 30th day of July, 2007 a true and correct copy of the **DEFENANT-INTERVENOR'S OPPOSITION BRIEF (COUNTS V AND IX)** was electronically served on the following attorneys of record:

Thomas Waldo, Esq.
Nathaniel Lawrence, Esq.
Bruce Landon, Esq.


<u>/s/  Steven W. Silver</u>

**EXHIBITS**

EXHIBIT 1…………………………...........................Three Mile Record of Decision

EXHIBIT 2………………………  ………………Settlement Agreement, *NRDC v.USFS.*

EXHIBIT 3……………………………………Timber Sales Data: Settlement Agreement

EXHIBIT 4…………………………………USFS Timber Sales—October -June 2007

EXHIBIT 5………………………………………………Timber Volume Under Contract

EXHIBIT 6……………………………………………………..Tongass Sawmill Capacity

EXHIBIT 7……………………………………………… .Flynn Timber Demand Study

EXHIBIT 8……………………………………………Ninth Circuit Order AFA v USDA